UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE FITZGERALD McGEE,<br><br>    Petitioner,<br><br>    v.<br><br>G.J. GUIRBINO, Warden,<br><br>    Respondent. | 1:03-cv-06758-TAG HC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT |

Petitioner is a state prisoner proceeding pro se with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections and Rehabilitation serving a sentence of eight years, pursuant to a judgment of the Superior Court of California, County of Kings, following his conviction upon a "no contest" plea for possession of a weapon in a state correctional facility, a violation of California Penal Code § 4502. (CT 62, 74; Doc. 9, Exh. A).

Petitioner appealed his conviction to the California Court of Appeal for the Fifth Appellate District ("5th DCA"), case number F039347. (Doc. 9, Exh. A).[1] On July 31, 2002, the 5th DCA issued an unpublished decision affirming Petitioner's conviction and indicating that, after

---

[1] In that appeal, Petitioner's appointed appellate attorney filed a brief pursuant to People v. Wende, 25 Cal.3d 436 (1979), indicating that she could find no arguable issues on appeal and asking the 5th DCA to independently review the record for error. (Doc. 9, Exh. B). Petitioner subsequently filed his own brief in the 5th DCA, raising a number of challenges to the prosecution's evidence, indirectly challenging his trial counsel's failure to take the case to trial, and then indicating that he accepted the eight-year plea bargain because the alternative, if convicted, was a potential twenty-five years to life Three Strikes sentence. (Doc. 9, Exh. C).

independent review, the court could find no arguable appellate issues. (Id.). On September 3, 2002, Petitioner filed a Petition for Review in the California Supreme Court, which was denied on October 16, 2002. (Doc. 9, Exh. D).[2]

On November 5, 2003, Petitioner filed the instant Petition for Writ of Habeas Corpus in the United States District Court for the Central District of California, alleging ineffective assistance of both trial and appellate counsel. (Doc. 1, pp. 6-7). On December 5, 2003, the case was transferred to this Court. On March 22, 2004, Respondent filed an Answer to the petition. (Doc. 9). On July 29, 2004 and August 5, 2004, Petitioner filed his Traverse. (Docs. 16 & 17).

Respondent concedes that Petitioner has exhausted his claims. (Doc. 9, p. 2).

## **FACTUAL BACKGROUND**

The Court hereby adopts the abbreviated Statement of Facts presented by the 5th DCA in its unpublished opinion, which facts appear to have been gleaned from the pre-sentence report prepared by the Kings County Probation Department:

> On March 1, 2001, at approximately 2000 hours, while incarcerated at the Substance Abuse Treatment Facility at Corcoran State Prison, inmate McGee, while in the gymnasium, was observed to pass two objects to inmate Chism. Inmate Chism, who is disabled and wheelchair bound, was observed to conceal the items on his body.
>
> Subsequently, correctional staff searched inmate Chism. Authorities located a white sock inside inmate Chism's underwear, which contained an inmate-manufactured weapon. Also located inside of the wheel chair seat cushion was a sock, which also contained an inmate-manufactured weapon.
>
> Subsequently, inmate McGee approached correctional staff and stated that the weapons belonged to him, which were found on inmate Chism.

(Doc. 9, Exh. A, p. 3).

///

///

---

[2] Respondent alleges that the Petition for Review was denied on July 19, 2000 (Doc. 9, p. 2). The Court takes judicial notice that the 5th DCA's opinion was issued on July 31, 2002, and thus the Petition for Review was not denied on July 19, 2000. Moreover, neither Petitioner nor Respondent included any documentation from the California Supreme Court to substantiate that the Petition for Review was denied. For his part, Petitioner does not allege that he filed anything in the California Supreme Court. (Doc. 1, p. 4). However, through its independent review of the California Supreme Court's electronic docket, the Court has determined that the dates of filing and denial for the Petition for Review are as indicated in the body of this Order. In any event, Respondent concedes that Petitioner has exhausted his claims. (Doc. 9, p. 2).

**DISCUSSION**

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).  Accordingly, this Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), cert. denied, 520 U.S. 1107 (1997), overruled on other grounds by, Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant Petition for Writ of Habeas Corpus was filed on November 5, 2003, after the enactment of the AEDPA, and thus it is governed by the AEDPA.

**II.  Legal Standard of Review**

A petition for writ of habeas corpus under 28 U.S.C. 2254(d) will not be granted unless the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams v. Taylor, 529 U.S. at 412-413.

The first prong of federal habeas review involves the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1).  This prong pertains to questions of law and mixed questions of law and fact.  Williams v. Taylor, 529 U.S. at 407-410; Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004).  A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it

confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor, 529 U.S. at 405.  A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. at 141.  Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003), citing Williams v. Taylor, 529 U.S. at 409.  Section 2254(d)(1)'s reference to "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S. at 412; Barker v. Fleming, 423 F. 3d 1085, 1093 (9th Cir. 2005).

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert. denied, Maddox v. Taylor, 543 U.S. 1038 (2004).  The AEDPA also requires that considerable deference be given to a state court's factual findings. A state court's factual findings are presumed to be correct, and such presumption of correctness may be rebutted only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

To determine whether habeas relief is available under § 2254(d),  the federal court looks to the last reasoned state court decision as the basis of the state court's decision. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the

merits but provided no reasoning for its decision, the federal habeas court must independently review the record to determine whether habeas corpus relief is available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir. 2002).  Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

**III.  Review of Petitioner's Claims**

The instant Petition for Writ of Habeas Corpus alleges the following grounds for relief:

Ground 1.   Petitioner was denied the effective assistance of trial counsel because his attorney failed to adequately emphasize inconsistencies in the evidence presented against him at the prison disciplinary proceeding, thus compelling Petitioner to accept a plea bargain.

Ground 2.   Petitioner was denied the effective assistance of trial counsel because Petitioner could not persuade his attorney to argue the inconsistencies of the evidence utilized against Petitioner at the prison disciplinary proceedings, thus frustrating Petitioner and causing him to accept a plea bargain.

Ground 3.   Petitioner was denied the effective assistance of counsel because he himself was unable to adequately argue his own appeal and his appellate attorney was hampered by the limitations of Petitioner's guilty plea.

Although the Court will address each aspect of Petitioner's claims, it appears to the Court that, notwithstanding the three separate claims, Petitioner is raising but a single instance of ineffective assistance of trial counsel.   The gravamen of Ground One is that Petitioner's court-appointed attorney failed to pursue what Petitioner perceived as inconsistencies in the evidence presented against him at the prison disciplinary proceedings.  As will appear evident below, Grounds Two and Three are merely variations of this same legal theme.  Thus, the Court will consider the three claims  together.

Specifically, in Ground One Petitioner contends that his trial counsel provided ineffective assistance in being "adamantly opposed" to and "completely disinterested" in following Petitioner's suggestion that counsel "emphasize the inconsistencies in the 'evidence' utilized against him in the

prison disciplinary proceedings." (Doc. 1, p. 6). In Ground Two, Petitioner alleges that he "could not persuade trial counsel to argue the inconsistencies of the 'evidence' utilized against Petitioner in the disciplinary proceedings." (Id.). Further, when the trial court denied Petitioner's motion to replace his trial counsel, Petitioner became "frustrated." Petitioner alleges that the guilty plea was "the product of this frustration with lack of counsel who would put the prosecution's case-in-chief to the test of proof." (Id.). Finally, in Ground Three, Petitioner alleges that when he eventually was provided competent counsel at the appellate level, he was "precluded from raising the claim of insufficiency of the evidence because of the waivers inherent in the coerced guilty plea." (Id. at p. 7).

For the reasons discussed below, the Court concludes that Petitioner's claims must be rejected and the instant Petition for Writ of Habeas Corpus must be denied.

**1. The Standard For Ineffective Assistance of Counsel**.

In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. at 687. To establish this, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. The petitioner must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id.; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential, and a court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland v. Washington, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, the petitioner must show prejudice, i.e., whether counsel's errors were so egregious as to deprive him of a fair trial, one whose result is reliable. Strickland v. Washington, 466 U.S. at 688, 694. To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; Williams v. Taylor, 529 U.S. at 391.   In so doing, the court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; United States v. Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

The Court does not need to consider the two elements in any particular order, nor does the Court need to consider both if the showing on either one is insufficient.  Strickland v. Washington, 466 U.S. at 697.  A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Id.   The object of an ineffectiveness claim is not to grade counsel's performance.  Id.  "If it is easier to dispose of an ineffective claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

With these principles in mind, the Court now turns to an analysis of Petitioner's claims of ineffective assistance of counsel.

### 2. Petitioner Has Not Raised Cognizable Habeas Claims.

Preliminarily, the Court notes that Petitioner's claims of ineffective assistance of counsel, as presently framed, are not cognizable on federal habeas corpus review.   By entering a guilty plea, Petitioner waived the right to a jury trial, the ability to confront his accusers, the power to compel the attendance of witnesses, and generally to challenge the evidence that petitioner committed the offense.  See Boykin v. Alabama, 395 U.S. 238, 242-243 (1969).  Typically, one who enters a valid guilty plea cannot on habeas corpus challenge a pre-plea constitutional violation; thus, a valid guilty plea bars the federal court from reviewing claims that relate to other constitutional rights.  Tollett v. Henderson, 411 U.S. 258, 266-267 (1973); Hudson v. Moran, 760 F.2d 1027, 1029-1030 (9th Cir. 1985).

A petitioner who has pleaded guilty may only contend that his guilty plea was not voluntary and intelligent, see e.g., Hill v. Lockhart, 474 U.S. 52, 56 (1985); Boykin v. Alabama, 395 U.S. at

242-243, or contend that the advice he received from his counsel was ineffective in violation of the Sixth Amendment. See, e.g., McMann v. Richardson, 397 U.S. 759, 771 (1970); Tollett v. Henderson, 411 U.S. at 267; Hudson v. Moran, 760 F.2d at 1030. As the Supreme Court has recognized,

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

Tollett v. Henderson, 411 U.S. at 267; McMann v. Richardson, 397 U.S. at 771 (holding that a defendant who pleads guilty on the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases); see also Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994), overruled on other grounds in Lockyer v. Andrade, 538 U.S. at 75-76 ("As a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations.").

Thus, only a petitioner's pre-plea claims that attack the voluntary and intelligent character of his plea are cognizable. And to the extent that a petitioner challenges his counsel's advice, he may only present claims relating to the plea advice; claims relating to pre-plea advice are barred by Tollett v. Henderson, 411 U.S. at 267. See Moran v. Godinez, 57 F.3d at 700.

Here, Petitioner's contentions regarding ineffective assistance of counsel do not implicate the voluntary or intelligent nature of the plea, nor do they question counsel's advice regarding that plea. Although Petitioner implies that his counsel's purportedly deficient performance frustrated Petitioner, thus indirectly contributing to Petitioner's strategic decision to plead guilty rather than go

to trial as a "Three Strikes" candidate, such implications fall far short of alleging that counsel's *erroneous advice* contributed to an involuntary and unknowing plea. Nowhere in his petition does Petitioner claim that counsel's advice regarding pleading guilty was erroneous.[3] Indeed, Petitioner acknowledges that he accepted the plea agreement to avoid a sentence that potentially would have been much longer, not because of any erroneous advice from his attorney. Nowhere in his petition does Petitioner claim that his counsel's deficient performance affected the knowing and intelligent nature of his guilty plea.[4] Accordingly, Petitioner's ineffective assistance claim need not be considered.

**3. Petitioner Was Not Denied The Effective Assistance Of Counsel.**

However, even assuming, arguendo, that such a claim of ineffective assistance were properly raised, Petitioner has established neither ineffectiveness nor prejudice as required by Strickland. Strickland v. Washington, 466 U.S. at 687-688.

In determining whether counsel was ineffective in advising a petitioner to plead guilty because counsel did not investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the petitioner depends on whether the discovery of the evidence

---

[3] Here, Petitioner acknowledges that he was able to avoid a potential Three Strikes sentence of at least twenty-five years to life by accepting a plea agreement and sentence of eight years. Under such circumstances, it would be extremely difficult, if not impossible, for Petitioner to establish that trial counsel's implicit advice to accept the plea agreement rather than proceed to trial, thereby accepting the risk of a much longer sentence, was deficient.

[4] In his second Traverse, Petitioner, for the first time in any state or federal proceeding, argues that his guilty plea was "induced by the very real threat that his counsel's incompetent performance at a jury trial would inevitably lead to a verdict of guilty where upon Petitioner could receive a life sentence under California's "Three Strike" law." (Doc. 17, p. 3). Petitioner also contends that counsel's performance was deficient for not moving to dismiss the charges for insufficient evidence. (Id.). The Court notes, however, that a ground for relief is not properly raised in a traverse. Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994)("[a] Traverse is not the proper pleading to raise additional grounds for relief.") Since, prior to the Traverse, Petitioner had never articulated a linkage between counsel's purportedly deficient performance and the voluntariness of his guilty plea, the Court will not address this claim raised for the first time in the Traverse.

would have caused counsel to not only have advised the petitioner to go to trial, but also whether the trial's outcome would have been favorable to the petitioner because of the undiscovered evidence. Hill v. Lockhart, 474 U.S. at 59.

First, Petitioner has failed to establish that trial counsel's conduct in failing to "emphasize" the "inconsistencies" in the evidence at his prison disciplinary hearing was deficient. In this regard, it bears emphasis that Petitioner himself admitted that at least one of the weapons recovered from Chism was his. Moreover, witnesses saw Petitioner give to Chism items resembling the socks in which the weapons were wrapped immediately before Chism was searched. Finally, a prison disciplinary hearing determined that Petitioner had committed the offense. The only "inconsistencies" noted by Petitioner relate to witnesses' descriptions of the items given to Chism, e.g., one witness thought one of the socks was blue when it was actually white. However, these inconsistencies do not provide Petitioner with a defense, i.e., they do not establish that Petitioner was factually innocent of the offense or that he was entitled to some legal defense that would otherwise have resulted in a not guilty verdict. Rather, these claimed inconsistencies merely go to the weight of the prosecution's evidence. However, in light of the strong evidence of Petitioner's guilt, including Petitioner's own confession, such minor discrepancies among eyewitnesses would appear to be insignificant from either a legal or tactical standpoint to any competent defense attorney.[5]

---

[5] It is worth noting that, although Petitioner's Traverse claims that trial counsel should have filed a motion to dismiss the charges for insufficient evidence, and although Petitioner otherwise alludes to the overall lack of persuasiveness of the prosecution's evidence, Petitioner was given a preliminary hearing at which the prosecution presented substantial evidence of Petitioner's guilt. In that hearing, Officer Tarnoff testified that he witnessed Petitioner passing two items of folded clothing, which appeared to be socks, to Chism, who then hid the items underneath his body in his wheelchair. (CT 13-17). Officer Barba then strip-searched Chism and observed something in his underwear. (CT 31-32). On further examination, the item turned out to be a sharpened, pointed weapon concealed inside a sock. (CT 33). Barba then searched the wheelchair itself and discovered a sixteen-inch sharpened weapon inside a blue sock hidden in a tear in the wheelchair's seat. (CT 37-38). After the weapons had been discovered on Chism, Officer Stohl testified that Petitioner approached him and stated to Stohl and Sgt. Clay that the weapon found on Chism belonged to Petitioner. (CT 48). Defense counsel

Moreover, Petitioner offers no support, by way of affidavits or other supplemental evidence, for the conclusion that a reasonable attorney would forego the plea agreement to which Petitioner ultimately acquiesced and insist on proceeding to trial, despite the unquestioned risk of incurring a mandatory twenty-five years to life sentence if convicted at trial. Nor has Petitioner established that he would have been able to present any legitimate defense at trial other than to point out the inconsistencies already mentioned. In sum, Petitioner has failed to sustain his burden of showing deficient performance by trial counsel.

Second, Petitioner has failed to establish prejudice because he has made no showing how his counsel's purported deficiencies would have affected the voluntary or knowing nature of his plea. A habeas claim cannot prevail where the record clearly reflects that the petitioner's guilty plea was knowingly, intelligently, and voluntarily made. Neyland v. Blackburn, 785 F.2d 1283 (5th Cir. 1986); U.S. v. Todaro, 982 F.2d 1025 (6th Cir. 1993). To satisfy the Constitution, a guilty plea must be voluntary and intelligent. See e.g., Hill v. Lockhart, 474 U.S. at 56; Boykin v. Alabama, 395 U.S. at 242. In addition, a criminal defendant must be advised of the constitutional protections he is giving up by pleading guilty, including the privilege against self incrimination, the right to a jury trial, and the right to confront witnesses. Boykin v. Alabama, 395 U.S. at 243. If a petitioner challenges a guilty plea, the court must determine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. at 56, quoting, North Carolina v. Alford, 400 U.S. 25, 31(1970).

At the plea proceeding, Petitioner, represented by counsel, informed the trial court that he was withdrawing his plea of not guilty and entering a "no contest" plea to the charge of possession of

---

aggressively and thoroughly cross-examined each witness. At the conclusion of the preliminary hearing, the trial court ruled that reasonable cause had been established to believe Petitioner had committed the charged offense. (CT 51).

a weapon in prison, in which Petitioner would admit one "strike" prior, with the express understanding that the prosecutor would move to dismiss the remaining strike prior and that petitioner would receive a maximum sentence of eight years in prison. (CT 70-73). Petitioner was informed of his rights to a speedy and trial by jury, to the processes of the court to subpoena witnesses for the defense, his right to see, hear, and cross-examine witnesses, and to testify or to remain silent and not incriminate himself. (CT 71-73). Petitioner indicated he understood each of those rights and that he was willing to give up those rights. (Id.).

Petitioner expressly informed the trial court that no one had made any threats or promises in order to induce him to plead "no contest" and that he was doing so "freely and voluntarily." (CT 74). Petitioner then pleaded "no contest" to one count of possession of a weapon in prison. (CT 74-75). Following the entry of Petitioner's plea, the trial court expressly found that Petitioner's plea of no contest and his admission of the prior strike were "knowingly, intelligently, freely, and voluntarily made." (CT 75-76).

Petitioner's admissions in open court negate his argument of his counsel's ineffectiveness. Representations of the petitioner at a plea hearing, as well as any findings made by the judge accepting the plea, constitute a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Thus, "[s]olemn declarations in open court carry a strong presumption of verity." United States v. Moore, 599 F.2d 310, 314 (9th Cir. 1979), citing, Blackledge v. Allison, 431 U.S. at 74; Chizen v. Hunter, 809 F.2d 560, 562 (9th Cir.1986) (same). Moreover, Petitioner's counsel at sentencing, as well as Petitioner himself in his supplemental brief before the 5th DCA, both indicated that Petitioner's potential exposure to a Three Strikes sentence was the motivating factor behind his acceptance of the eight-year plea agreement. Under these

///

circumstances, the Court cannot correlate any allegedly deficient conduct by trial counsel to Petitioner's decision to plead "no contest."

To the contrary, the foregoing chronology establishes that Petitioner's plea was knowing and voluntary; thus, any instances of deficient performance by trial counsel could not possibly have had an effect on the outcome, i.e., on the entry of a knowing and voluntary plea of guilty. Accordingly, Petitioner has failed to show prejudice under <u>Strickland</u>. <u>Strickland v. Washington</u>, 466 U.S. at 688, 694-696.

For all of the reasons set forth above, the Court concludes that the state court's adjudication rejecting Petitioner's claims of ineffective assistance of counsel was not contrary to or an unreasonable application of clearly established federal law.

## **ORDER**

Accordingly, for the reasons set forth above, the Petition for Writ of Habeas Corpus (Doc. 1), is DENIED, with prejudice.

The Clerk of Court is DIRECTED to enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

Dated:   **November 27, 2006**                                    **/s/ Theresa A. Goldner**
**j6eb3d**                                                      UNITED STATES MAGISTRATE JUDGE